## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | | |
|---|---|---|
| **JENNIFER PHILLIPS,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:19-cv-362** |
| | ) | |
| **MARK T. ESPER,** | ) | |
| **Secretary of Defense,** | ) | |
| **Defendant.** | ) | |

### MEMORANDUM OPINION

Plaintiff Jennifer Phillips, a federal government employee for nearly three decades, has filed this lawsuit against her employer, alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII") and of the Equal Pay Act ("EPA"). Following full discovery, defendant filed a motion to dismiss some of plaintiff's Title VII claims on ground that plaintiff has failed to administratively exhaust some claims, and a motion for summary judgment on all of plaintiff's claims pursuant to Rule 56, Fed. R. Civ. P. Defendant's motions have been fully briefed and argued orally, and thus are now ripe for disposition. After oral argument, plaintiff filed a motion for leave to supplement the summary judgment record pursuant to Rule 56(e), Fed. R. Civ. P. Plaintiff's motion has been full briefed and is thus also ripe for disposition.[1]

For the reasons that follow, (i) plaintiff's motion for leave to supplement is granted; (ii) defendant's motion to dismiss is granted in part and denied in part; and (iii) defendant's motion for summary judgment is granted in part and denied in part. Specifically, this matter will proceed to trial on (i) plaintiff's retaliation-based claim regarding her non-selection for the Director of

---

[1] Oral argument is dispensed with respect to plaintiff's motion for leave to supplement because the facts and legal contentions are adequately set forth in the existing record and oral argument would not aid in the decisional process. *See* Rule 78, Fed. R. Civ. P. (providing that a court may determine motions on the briefs without oral hearings).

Contracting position and (ii) plaintiff's hostile work environment claim, unless the parties reach a settlement agreement in the meantime. With respect to all of plaintiff's other claims, either (i) judgment must be entered in favor of defendant because plaintiff has failed to establish a triable issue of material fact, or (ii) the claims must be dismissed for failure to exhaust her administrative remedies.

## I.

The entry of summary judgment is appropriate only where there are no genuine disputes of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Thus, it is important to identify the record facts as to which no genuine dispute exists. In this regard, it is necessary to address whether the parties have complied with the requirements for presenting a summary judgment motion as set forth in Local Rule 56 and the Rule 16(b) Scheduling Order inasmuch as a party's compliance or noncompliance with the Local Rule and the Order defines the content of the summary judgment record.

Pursuant to Local Rule 56(B) and the Rule 16(b) Scheduling Order, a motion for summary judgment must contain a separately captioned section listing, in numbered paragraph form, all material facts that the movant contends are not genuinely disputed. *See* Rule 56, Local Civ. R.; *Phillips v. Esper*, No. 1:19-cv-362 (E.D. Va. July 22, 2019) (Rule 16(b) Scheduling Order) (Dkt. 13). The nonmovant must then respond to each numbered paragraph indicating whether or not the nonmovant disputes the asserted fact and, if the nonmovant disputes an asserted fact, the nonmovant must cite to the legally admissible evidence in the record supporting the dispute.[2]

---

[2] Specifically, the Rule 16(b) Scheduling Order in this case states, in relevant part, that:

> [a] brief in opposition to a motion for summary judgment must include a separately captioned section within the brief addressing, in numbered-paragraph form corresponding to the movant's section, each of the movant's enumerated facts and indicating whether the non-movant admits or disputes the fact with appropriate citations to the record. The Court may assume that any fact identified by the movant as

Failure to respond in this fashion means that the asserted fact will be taken as admitted.[3]

Although defendant complied with both the Local Rule and the Rule 16(b) Scheduling Order, plaintiff did not do so. Specifically, plaintiff's opposition to defendant's motion for summary judgment does not reference or address 36 of the 53 facts in defendant's statement of undisputed material facts.[4] Thus, those 36 facts are deemed admitted. With respect to the 17 facts that plaintiff does mention in her opposition brief, plaintiff does not identify a specific dispute with those facts, but instead states that those material facts are "discussed" in other sections of her opposition brief. *See* Opposition to Defendant's Motion for Summary Judgment, Dkt. 26, at 6. After stating that certain material facts from defendant's brief are "discussed" elsewhere in plaintiff's brief, plaintiff submits additional facts in narrative form largely without citation to any portion of the record.[5] Accordingly, in these circumstances, "a district court is free, in the exercise of its sound discretion, to accept the moving party's facts as stated." *Caban Hernandez v. Phillip Morris USA, Inc.*, 486 F.3d 1, 7 (1st Cir. 2007); *Foglia v. Clapper*, 885 F. Supp. 2d 821, 823 (E.D. Va. 2012) (same).

---

undisputed in the movant's brief that is not refuted in the non-movant's brief is admitted for the purpose of deciding the motion for summary judgment.

*Phillips v. Esper*, No. 1:19-cv-362 (E.D. Va. July 22, 2019) (Rule 16(b) Scheduling Order) (Dkt. 13), at ¶ 8.

[3] *See, e.g.*, *JDS Uniphase Corp. v. Jennings*, 473 F. Supp. 2d 705, 707 (E.D. Va. 2007) (movant's statement of undisputed facts is properly deemed admitted where brief in opposition fails to "identify with any specificity which facts, if any, were disputed") (citing Local Civ. R. 56(B)); *Hayes v. Sotera Defense Solutions, Inc.*, No. 1:15-cv-1130, 2016 WL 2827515, at *2 (E.D. Va. May 12, 2016) ("Any facts listed in the moving party's listing of material facts which are not specifically controverted in the non-moving party's statement of facts in opposition to the motion will be deemed to be admitted for purposes of [a] motion for summary judgment.") (citing Local Civ. R. 56(B)); *Ferguson v. Holder*, No. 1:14-cv-1641, 2015 WL 11117148, at *1 (E.D. Va. Feb. 9, 2015) (movant's statement of undisputed facts is "appropriately deemed admitted and governs th[e summary judgment] record" where non-movant fails to comply with Scheduling Order's provision regarding statement of facts).

[4] Specifically, plaintiff's opposition brief does not mention the following numbered facts from defendant's brief in support of its motion for summary judgment: 1-5, 15-22, 25-29, 35-50, and 52-53.

[5] *See Integrated Direct Marketing, LLC v. May*, 129 F. Supp. 3d 336, 345 (E.D. Va. 2015) (a party's "narrative version of its own interpretation of the facts fails to comply with Local Civil Rule 56(B)").

Thus, the facts recited herein are derived from defendant's list of material facts, incorporating plaintiff's comments on defendant's list of material facts where appropriate. Where it appears that plaintiff seeks to dispute an asserted fact, but either plaintiff's dispute is immaterial or plaintiff has failed to support her dispute with admissible record evidence, it has been noted.

1. The Defense Logistics Agency ("DLA") is a component of the Department of Defense ("DoD") that manages the global supply chain for the five branches of the military and other federal agencies.

2. Plaintiff began working for the DLA in May 1991. Plaintiff has spent 18 of her nearly 30 years of government service within the Strategic Materials component of DLA and its predecessor entity.

3. Strategic Materials is a component of the DLA that currently employs approximately 70 staff members. Strategic Materials' mission is "to decrease and preclude dependence upon foreign sources or single points of failure for strategic materials in times of national emergency."[6]

4. There are three Directorates within Strategic Materials: (i) Contracting, (ii) Material Management, and (iii) Strategic Planning and Market Research.

5. Since 2014, plaintiff has been employed as the Chief of the Contracting Directorate within Strategic Materials.[7] Plaintiff supervises between five and six subordinates in her role as Chief of the Contracting Directorate.

6. The Chief of the Contracting Directorate is a General Schedule ("GS") Grade 14 position ("GS-14").[8] Plaintiff is compensated as a GS-14 Step 10.

7. Beginning in approximately 2015, the DoD initiated a department-wide "delayering" initiative to "reduce the number of supervisory layers" within various components and to "move people from the [Senior Executive Service ("SES")] and [GS-]15 positions" in order to have a lower ratio of supervisors to staff.[9]

---

[6] See DLA Mission, available at https://www.dla.mil/HQ/Acquisition/StrategicMaterials/ (last accessed June 17, 2020).

[7] At present, plaintiff remains employed as the Chief of the Contracting Directorate within Strategic Materials.

[8] The General Schedule (GS) payscale is the federal government payscale used to determine the salaries of over 70% of federal civilian employees. An employee's base pay depends on two factors - the GS Paygrade of their job, and the Paygrade Step they have achieved (depending on seniority or performance). See GS Payscale Table for 2020, available at https://www.federalpay.org/gs/2020 (last accessed June 17, 2020).

[9] Dep. of Ronnie L. Favors, Dkt. 23-1, DEX 1, at 22-26.

Specifically, the DLA Human Resources Department would determine whether there had been changes in an organization, such as a loss of workload, that indicated that a position should no longer be a GS-15 position.[10]

8.  Matthew Beebe, who is in charge of acquisition at DLA, explained the DoD's "delayering" initiative to employees at a town hall meeting.[11] Beebe told employees that the "delayering" process applied to GS-15 and to GS-14 positions.

9.  According to Ronnie Favors, the Administrator of DLA, the "delayering" initiative targeted GS-15 and SES positions. When someone retired, the DLA Human Resources Department would review the job description and determine whether the position should remain a GS-15 or be reduced to a GS-14. The DLA Human Resources Department considered several factors, including the supervisor/subordinate ratio and the expected future workload, to assess whether a position should be changed from a GS-15 to a GS-14 level position.[12]

10. At one time, Strategic Materials was comprised of over 100 employees and was responsible for selling $500 million worth of materials. Today, Strategic Materials is substantially smaller, as it is comprised of only 70 employees and is responsible for selling $60-80 million worth of materials.

11. During the "delayering" initiative, three women who were employed in GS-15 level positions in Strategic Materials retired: Cheryl Kates, Paula Stead, and Sharon Blue. No men employed in a GS-15 level position in Strategic Materials retired during this timeframe.

12. Cheryl Kates served as the Director of the Strategic Materials business office until her retirement.[13] The Director of the Strategic Materials business office position

---

[10] Defendant relies on the deposition testimony of Ronnie Favors, the Administrator of DLA, to support Material Fact 7. Favors testified at his deposition that he learned of the DoD's general "delayering" initiative sometime around 2015 via an explanation from his superiors, namely Matthew Beebe, the head of DLA acquisitions. *Id.* at 23. Favors further testified that employees were given "some type of notice" about the "delayering in general to reduce the ratio of supervisors to staff" but that Favors did not have that documentation available. *Id.* at 23-24.

Plaintiff attempts to dispute this fact and Material Facts 8, 9, 10, 11, 12, 14, 21, 26, and 27 by asserting that defendant's asserted facts are not credible. Plaintiff has not provided any record evidence to support its dispute with these facts as discussed in detail in note 17, *infra.* Accordingly, there is no genuine dispute of material fact with respect to these facts.

[11] Dep. of Ronnie L. Favors, Dkt. 23-1, DEX 1, at 26. Favors did not indicate the date of this town hall meeting in his deposition testimony.

[12] Dep. of Ronnie L. Favors, Dkt. 23-1, DEX 1, at 30-32. To be clear, Favors testified at his deposition that did not know what type of analysis went into the determination of whether or not a position should be "delayered," but Favors testified that he was aware, through conversations with his supervisors, that the "delayering" process was "driven" by the supervisor/subordinate ratio and the expected future workload of the position. *Id.*

[13] The summary judgment record contains no evidence of the date on which Kates retired.

was eliminated via a reorganization in 2014. In 2018, the non-supervisory duties that had been assigned to the Director of the Strategic Materials business office position were assigned to a Lead Management Analyst GS-14 position. Wanda Fleming is currently employed in the Lead Management Analyst GS-14 position.

13. Paula Stead served as the Deputy Administrator of Strategic Materials until her retirement in 2015.

14. The Deputy Administrator position was a GS-15 position prior to Stead's retirement and it remains a GS-15 position today.

15. In July 2016, DLA announced a vacancy for the Deputy Administrator position. Eric Mata and plaintiff both applied for the position.

16. Ronnie Favors, the Administrator of DLA and the selecting official for the Deputy Administrator position, sought an individual who could assist Strategic Materials with an upcoming audit. As a result, Favors "felt like someone with a financial background was going to be a very strong candidate" because Favors is not an accountant.[14]

17. Eric Mata had served as the Director of Financial Operations for DLA Strategic Materials since May 2014. Through that role, Mata had experience in budgeting, accounting, and financial analysis. Mata had worked at DLA since 2009, and prior to the Director of Financial Operations role, Mata had served as a systems accountant, a business process analyst, a branch chief for budget operations, and a division chief over financial analysis and integrity at DLA.

18. Plaintiff testified that she does not have a degree in accounting, that she has never worked as a finance professional, and that she has never conducted a financial audit.

19. Eric Mata was selected for the Deputy Administrator position and has served in that role since October 2016. Mata is compensated at the GS-15 level.

20. Sharon Blue served as the Director of Contracting for Strategic Materials until her retirement in 2016.

21. After Sharon Blue's retirement, DLA determined that the Director of Contracting position would no longer be a GS-15 position. Instead, because of the "delayering" initiative, the Director of Contracting position would be a GS-14 position.[15]

---

[14] Dep. of Ronnie L. Favors, Dkt. 23-1, DEX 1, at 66-67.

[15] *See* Dep. of Ronnie L. Favors, Dkt. 23-1, DEX 1, at 56. It is not clear from the summary judgment record who at DLA made the decision that the Director of Contracting position would be a GS-14 position rather than a GS-15 position or when exactly that decision was made. Defendant cites to an email from Ronnie Favors to Roxanne Banks for the proposition that the Director of Contracting position was downgraded to GS-14 from GS-15 after a review by DLA. In this respect, Favors' email states: "As for the GS-15 position, it is unsupported by current conditions

22. From February 2016 through June 2017, Colonel Abner Devallon, a colonel in the U.S. Air Force, was temporarily detailed as the Acting Director of Contracting for Strategic Materials.

23. While Col. Devallon served as the Acting Director of Contracting, he remained an active duty member of the U.S. Air Force and was paid by the Air Force. Col. Devallon was never compensated by DLA.

24. From June 29, 2017 through approximately July 2018, after Col. Devallon had vacated the position, plaintiff served as the Acting Director of Contracting for Strategic Materials.

25. Ronnie Favors, the Administrator of DLA, offered plaintiff the Acting Director of Contracting position because he viewed it as a voluntary opportunity for an employee to gain leadership experience.

26. On August 15, 2017, plaintiff's first-line supervisor, Eric Mata, emailed Wanda Fleming, the Lead Management Analyst of Strategic Materials, to request that plaintiff receive a temporary promotion to a GS-15 level while plaintiff served as the Acting Director of Contracting.

27. On August 23, 2017, Fleming emailed Mata to inform him that the DLA Human Resources Department rejected Mata's temporary promotion request because the temporary promotion request was for "a job we are not going to fill (GS-15)."[16] In essence, plaintiff could not be temporarily promoted to the GS-15 level because the Director of Contracting position had been "delayered" to a GS-14 position, and plaintiff was already compensated at a GS-14 level.[17]

---

(delayering plans, range of responsibility, senior management decisions, etc.). Consequently, with some adjustments for audit sustainment responsibilities, we have submitted the PD [Position Description] to HR for reclassification to its proper required level of GS-14." Email from Ronnie Favors to Roxanne Banks (June 29, 2017), Dkt. 23-2, DEX 34. Banks' reply to Favors' email states: "I suspected the GS15 billet got consumed as you described but wanted to be sure." Email from Roxanne Banks to Ronnie Favors (June 29, 2017), Dkt. 23-2, DEX 34. This email chain does not state that a review process took place or a state who made the ultimate decision to downgrade the Director of Contracting position from the GS-15 level to the GS-14 level. But it does establish that Favors sent a request to HR that the Director of Contracting position be changed from a GS-15 to a GS-14 position prior to June 29, 2017.

[16] Email from Wendy Fleming to Eric Mata (August 23, 2017), Dkt. 23-2, DEX 33.

[17] As noted in note 10 *supra*, plaintiff has attempted to dispute this fact and Material Facts 7, 8, 9, 10, 11, 12, 14, 21, 26 by asserting that defendant's asserted facts are not credible. In this respect, plaintiff argues that (i) defendant does not have any documentation regarding the "delayering" initiative, (ii) defendant has not identified any fixed ratio of supervisors to staff that justified "delayering," (iii) no SF-50 or other document was ever issued reflecting the downgrade of the Director of Contracting position from a GS-15 position to a GS-14 position, and (iv) Eric Mata, plaintiff's first line supervisor, stated in an EEO interview that as of February 2018, the Director of Contracting position was a GS-15 level position. Plaintiff's assertions labeled (i)-(iii) are arguments, and plaintiff has not cited any record evidence in support of those arguments. The only record evidence that plaintiff cites in support of this broad dispute is Mata's February 2018 EEO interview. In this respect, Mata stated that the Director of Contracting was a GS-15 position as of February 2018, but Mata's response to the next question was that he had tried to get a

28. DLA did not issue an SF-50 that reflects plaintiff's tenure as the Acting Director of Contracting because "it is common at DLA for someone who is at the same [pay] grade" to occupy a vacancy temporarily without an SF-50.[18]

29. Col. Devallon also did not receive an SF-50 when he was temporarily detailed to the Acting Director of Contracting position.

30. Both Col. Devallon's experience and plaintiff's experience as Acting Director of Contracting were documented only in their respective annual performance appraisals.

31. On April 23, 2018, a job announcement for the Director of Contracting position was posted to USAJOBS as a GS-14 position.[19]

32. The Director of Contracting position was posted to USAJOBS twice. The first posting on April 23, 2018 was only posted to DLA, whereas the second posting on May 25, 2018 was posted to the entire DoD.

33. The certification list for the first job posting for the Director of Contracting position included plaintiff, Charles Baker, and Mark Floyd.

34. On May 16, 2018, Eric Mata requested that the position be re-announced to the entire DoD in order to get a broader and larger pool of candidates.

35. The certification list for the second job posting for the Director of Contracting position also included plaintiff, Charles Baker, and Mark Floyd.

36. Plaintiff, Charles Baker, Mark Floyd, and Susan Williams were selected to be interviewed. Susan Williams declined the interview.

---

temporary promotion for plaintiff to the GS-15 level, but that the temporary promotion did not happen because the position was in the process of being changed. *See* EEO Counselor's Report of Interview with Eric Mata, February 2018, Dkt. 26-1, Ex. 11, at 4. Moreover, Mata testified at his deposition that he was not directly involved with the reclassification of the Director of Contracting position, nor did Mata recall being included on any emails on the subject. *See* Dep. of Eric Mata, Dkt. 3201, DEX 43, at 100-102. Thus, the undisputed summary judgment record supports the facts stated above, namely that a "delayering" initiative was ongoing and that Human Resources stated that the Director of Contracting role was no longer a GS-15 role when Mata requested that plaintiff be temporarily promoted. Accordingly, there is no genuine dispute of material fact with respect to the material facts at stated.

[18] Declaration of Rebecca Polansky, Dkt. 23-1, DEX 13, at ¶ 3.

[19] Plaintiff attempts to dispute this fact and Material Facts 32, 33, 34, 35 by asserting that defendant's Certificate of Eligibles indicates that a selection for the Director of Contracting position was made prior to plaintiff's interview for that position. Plaintiff's argument is not a dispute with any of the facts asserted. Instead, it is an argument that defendant's non-discriminatory reason for not selecting plaintiff as the Director of Contracting was pretextual. Accordingly, there is no genuine dispute of material fact with respect to these facts as asserted, and plaintiff's argument with respect to the Certificate of Eligibles is discussed in Part IX, *infra*.

37. The interview panel was comprised of Thomas Rasmussen, Russell Wells, Theresa Leland, and Eric Mata. Mata was the selecting official for the Director of Contracting position.

38. Mata selected Mark Floyd for the Director of Contracting position because Floyd received the highest average score from the interview panel. Floyd declined the job offer.

39. Mata then offered the Director of Contracting position to Charles Baker. Baker had received the second highest average score from the interview panel. Baker accepted the job offer.

40. In the Director of Contracting position, Baker has been compensated only at the GS-14 level.

41. Every DLA employee who has served in the Director of Contracting position since Sharon Blue's retirement has been compensated at the GS-14 level.

42. In 2018, DLA changed their performance evaluation system from a system in which "3" was the highest rating to a system in which "5" was the highest rating. In the new system, a "3" represents "Fully Successful" performance and a "5" represents "Outstanding" performance.

43. In May 2018, prior to Charles Baker's hiring as Director of Contracting, Eric Mata served as plaintiff's first-line supervisor. With respect to the DLA's new performance evaluation system, Mata regarded a "Fully Successful" rating as representative of effective and high-quality work and an "Outstanding" rating as representative of truly exceptional work and as difficult to obtain. Mata rated plaintiff a 3.8 in her 2018 performance evaluation, which was plaintiff's first evaluation under the new rating system.

44. In 2019, Charles Baker served as plaintiff's first-line supervisor. Baker rated plaintiff a 3.8 in her 2019 performance evaluation.[20]

45. Martha Hochberg, who is also female, is the only individual that plaintiff has identified that plaintiff believes is similarly situated to her and was rated more favorably than her in 2019. Baker rated Hochberg a 4.0 in her 2019 performance evaluation.

46. Plaintiff's first-line supervisor, Charles Baker, received the same 2019 performance

---

[20] In her deposition testimony, plaintiff testified that Baker rated plaintiff a 3.9 in her 2019 performance evaluation. *See* Dep. of Jennifer Phillips, Dkt. 23-1, DEX 3, at 115. But a declaration from Wanda Fleming, the Lead Management Analyst at DLA, avers that Baker rated plaintiff a 3.8 in her 2019 performance evaluation. *See* Declaration of Wanda Fleming, Dkt. 23-1, DEX 10, at ¶ 7. Because Fleming's declaration includes a table with the performance ratings for all four individuals rated by Charles Baker in 2019, it is assumed for the purposes of this Opinion that the accurate rating is the 3.8 rating listed in Fleming's declaration.

rating as plaintiff.

47. Plaintiff has asserted that a number of comments and actions allegedly made by her co-workers have created a hostile work environment for her, including[21]:

    a. Plaintiff believes that her co-workers spread rumors that plaintiff drank alcohol on the job based on (i) a co-worker's invitation to join them for drinks after a big project and (ii) a different co-worker's statement that there actually was not vodka in plaintiff's water bottle after the co-worker took plaintiff's water bottle and drank out of it.

    b. Plaintiff heard a rumor that Charles Baker made a statement that plaintiff's son passed away because of plaintiff's "lifestyle" and that plaintiff deserved that personal tragedy because of her "lifestyle." Plaintiff is not aware what Baker meant by the term "lifestyle."

    c. Plaintiff believes that co-workers criticized her work, called her unprofessional, and usurped her authority in the workplace.

    d. Plaintiff testified in her deposition that her co-workers stared at her breasts in the hallways and in meetings on multiple occasions.

48. On April 24, 2013, plaintiff filed an anonymous informal EEO complaint that alleged sex-based discrimination related to an allegedly threatening email plaintiff received from her co-worker, John DeRenzis. The anonymous informal EEO complaint identified Gary Porter, DeRenzis's supervisor, as the responsible management official. Plaintiff did not pursue this claim beyond the informal EEO complaint.

49. On March 29, 2017, plaintiff made initial contact with the EEO office for alleged discrimination based on sex, age, reprisal, and hostile work environment based on reprisal. Plaintiff alleged that during a March 29, 2017 meeting with Gary Porter, Charles Harder, and Col. Abner Devallon, Porter and Harder criticized plaintiff's work in various ways. Specifically, plaintiff alleged that Porter asked how plaintiff thought Porter's "employee that [plaintiff] had filed an EEO complaint against felt when [plaintiff] kept pointing out the employee's every error."[22]

50. On May 4, 2017, plaintiff again contacted the EEO office regarding Porter and Harder's alleged conduct in the March 29, 2017 meeting. Plaintiff did not proceed further with the EEO process on this claim.

---

[21] Plaintiff did not dispute defendant's formulation of this material fact in her opposition brief. But defendant's formulation of this material fact omits many of the details associated with the incidents that plaintiff argues created a hostile work environment for her. Those details are addressed in the analysis of plaintiff's hostile work environment claim in Part VIII, *infra*.

[22] EEO Contact Form, Dkt. 23-1, DEX 20, at 3.

51. On January 8, 2018, plaintiff made initial contact with the EEO office to file a complaint based on sex discrimination and retaliation for her prior protected activity. Specifically, plaintiff alleged that she had not received official documentation of her position as Acting Director of Contracting, a position she began in June 2017. Plaintiff further alleged that she had not received additional compensation for serving as Acting Director of Contracting and that she was being prevented "from receiving the opportunity to compete fairly for a GS-15" Director of Contracting position because the position was downgraded to a GS-14 position.

52. On July 25, 2018, plaintiff amended her EEO complaint. Plaintiff added allegations that her 2018 performance evaluation of "3, fully successful" was not accurate and that in or around July 12, 2018, she learned that she was not selected for the Director of Contracting position.

53. In June 2019, approximately three months after plaintiff filed the instant case, plaintiff alleges that she made initial contact with the EEO office regarding Charles Baker's 2019 performance evaluation of plaintiff. The DLA EEO office has no record of plaintiff's purported June 2019 contact.

## II.

As an initial matter, defendant seeks dismissal, pursuant to Rule 12(b)(1), of plaintiff's Title VII claims related (i) to her non-selection for the Deputy Administrator position in 2016 and (ii) to her 2019 performance evaluation on the ground that plaintiff has failed to exhaust her administrative remedies with respect to those claims.[23] Plaintiff does not contend that she has administratively exhausted her claims arising out of those two employment actions. Because plaintiff did not administratively exhaust those Title VII claims, plaintiff's Title VII claims related to those two employment actions must be dismissed for lack of jurisdiction.

---

[23] In her complaint, plaintiff has not alleged a separate Title VII claim with respect to each adverse employment decision allegedly made by defendant. Instead, plaintiff has alleged a Title VII sex discrimination claim (Count I) and a Title VII retaliation claim (Count II) that each incorporate all of the previous allegations in plaintiff's complaint. Neither Count I nor Count II identifies a specific adverse employment action within their respective separately captioned sections. As a result, defendant addresses six allegedly adverse employment actions mentioned in the complaint: (1) non-selection of plaintiff for the Director of Contracting position in 2018; (2) non-selection of plaintiff for the Deputy Administrator position in 2016; (3) plaintiff's 2019 performance evaluation; (4) plaintiff's 2018 performance evaluation; (5) denial of a temporary salary increase from GS-14 to GS-15 when plaintiff was Acting Director of Contracting from June 2017 through July 2018; and (6) DLA's failure to issue plaintiff an SF-50 to document her temporary duties as Acting Director of Contracting.

Before filing suit under Title VII, a plaintiff must exhaust her administrative remedies by bringing a charge with the EEO. 42 U.S.C. § 2000e-5(f)(1); *Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009). Here, the undisputed record reflects that plaintiff never asserted any claim related to her non-selection for the Deputy Administrator position in her formal EEO complaint in January 2018 or in her amended EEO complaint in July 2018. And plaintiff did not receive her 2019 performance evaluation until June 2019, three months after the complaint in this case was filed in federal court.[24] Thus, plaintiff could not have exhausted her administrative remedies related to her 2019 performance evaluation prior to the filing of this lawsuit. Accordingly, any Title VII claim related (i) to plaintiff's non-selection for the Deputy Administrator position or (ii) to plaintiff's 2019 performance evaluation must be dismissed for lack of subject matter jurisdiction because plaintiff has failed to exhaust her administrative remedies with respect to those claims.[25]

### III.

Defendant also seeks dismissal of plaintiff's Title VII claims related (i) to plaintiff's compensation as Acting Director of Contracting, (ii) to the absence of an SF-50 to document plaintiff's position as Acting Director of Contracting, and (iii) to plaintiff's 2018 performance

---

[24] In addition, DLA has no record of plaintiff making any EEO contact in June 2019. *See* Declaration of Charnika Hayes, Dkt. 23-1, DEX 14.

[25] As noted, plaintiff does not contend that she has administratively exhausted a Title VII claim related to her non-selection for the Deputy Administrator position or to her 2019 performance evaluation. *See* Opposition to Defendant's Motion for Summary Judgement, Dkt. 26, at 1-2. Instead, plaintiff, through counsel, opposes defendant's motion for summary judgment with respect to only four specific claims: (1) a Title VII sex-based discrimination claim related to plaintiff's non-selection as the Director of Contracting in 2018; (2) a Title VII retaliation-based claim related to plaintiff's non-selection as the Director of Contracting in 2018; (3) an Equal Pay Act claim related to plaintiff's compensation as Acting Director of Contracting from June 2017 through July 2018; and (4) a Title VII hostile work environment claim. *Id.* In such circumstances, "many courts within the Fourth Circuit, as well as other circuits, have held that a plaintiff's failure to respond to a summary judgment motion constitutes waiver or abandonment of a claim." *Orbit Corp. v. Fedex Ground Package Sys., Inc.*, 2016 WL 6609184, at *15 (E.D. Va. Nov. 8, 2016) (collecting district court cases). Here, there is a lack of subject matter jurisdiction over any Title VII claims related to the two allegedly adverse employment decision identified above. But even assuming, *arguendo*, that there is jurisdiction over those claims (which there is not), plaintiff has abandoned the claims by not addressing the claims in her opposition brief.

evaluation on the ground that plaintiff failed to exhaust her administrative remedies in a timely fashion with respect to those claims. Here again, plaintiff does not contend that she timely exhausted her claims arising out of those three employment actions. Because plaintiff's Title VII claims related (i) to plaintiff's compensation as Acting Director of Contracting and (ii) to the absence of an SF-50 to document plaintiff's position as Acting Director of Contracting are procedurally time-barred, those Title VII claims must be dismissed. In contrast, plaintiff's Title VII claim related to 2018 performance evaluation is timely and will not be dismissed on that basis.

Before a federal civil servant can sue her employer in court for discriminating against her in violation of Title VII, she must first exhaust her administrative remedies. 42 U.S.C. § 2000e–16(c). To exhaust those remedies, a plaintiff must initiate contact with an EEO counselor about Title VII allegations within 45 days of the alleged incident.[26] Failure to consult with an EEO counselor within the required timeframe is grounds for dismissing an employee's Title VII claim. *See Zografov v. Veterans Admin. Med. Ctr.*, 779 F.2d 967, 970 (4th Cir. 1985).

Here, plaintiff initiated EEO contact on January 8, 2018 regarding her service as Acting Director of Contracting without receiving (i) a promotion to the GS-15 level or (ii) an SF-50 reflecting her promotion. But plaintiff was aware of the putative claims related to those personnel actions when she was made the Acting Director of Contracting on June 29, 2017. Thus, plaintiff did not initiate contact with an EEO counselor until over six months after the personnel decisions were made that related to her role as Acting Director of Contracting. Accordingly, any Title VII

---

[26] *See* 29 C.F.R. § 1614.105(a)(1) ("Aggrieved persons who believe they have been discriminated against…must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action.").

The 45-day time limit is subject to equitable modification, but plaintiff has neither pled nor otherwise argued any basis for equitable tolling or estoppel in this litigation. *See Price v. Litton Bus. Sys., Inc.*, 694 F.2d 963, 966 (4th Cir. 1982) (citing *Zipes v. Trans World Airlines*, Inc., 455 U.S. 385 (1982) (holding that Title VII timing requirements are subject to equitable modification).

claim related (i) to plaintiff's compensation as Acting Director of Contracting or (ii) to the absence of an SF-50 stating her role as Acting Director of Contracting must be dismissed due to plaintiff's failure to exhaust her administrative remedies in a timely matter with respect to those claims.[27]

In contrast, plaintiff initiated EEO contact on June 18, 2018 regarding her 2018 performance evaluation. *See* DLA EEO Letter to Plaintiff's Attorney, Dkt. 26-1, Exhibit 16, at 2. Plaintiff received her 2018 performance valuation on May 30, 2018. Accordingly, plaintiff made initial contact with an EEO counselor within 45 days of receiving her 2018 performance evaluation, and any Title VII claim related to that incident is timely.

## IV.

Defendant has moved for summary judgment on all of plaintiff's remaining claims. In this respect, the standard for summary judgment is too well-settled to require extensive discussion here. Simply put, summary judgment is appropriate when there is "no genuine issue as to any material fact" and based on those undisputed facts the moving party "is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To serve as a bar to summary judgment, facts must be "material," which means that the disputed fact "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Importantly, at the summary judgment stage, courts must "view the evidence in the light most favorable to...the non-movant." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002).

## V.

Defendant has moved for summary judgment on plaintiff's sex-based discrimination claim

---

[27] As noted, here again, plaintiff does not contend that she has administratively exhausted a Title VII claim related (i) to plaintiff's compensation as Acting Director of Contracting or (ii) to the absence of an SF-50 to document plaintiff's position as Acting Director of Contracting. *See* Opposition to Defendant's Motion for Summary Judgement, Dkt. 26, at 1-2. As noted in note 25 *supra*, plaintiff's failure to oppose defendant's motion in this respect constitutes abandonment of any such claim. *See Orbit Corp. v. Fedex Ground Package Sys., Inc.*, 2016 WL 6609184, at *15 (E.D. Va. Nov. 8, 2016) (collecting district court cases).

stemming from plaintiff's 2018 performance evaluation on the ground that plaintiff cannot establish a *prima facie* case of sex discrimination. Plaintiff does not contend that she has established a *prima facie* case of sex discrimination with respect to her 2018 performance evaluation. Because plaintiff cannot establish a *prima facie* case of sex discrimination with respect to her 2018 performance evaluation, defendant is entitled to summary judgment on that claim.

Plaintiff offers no direct evidence of sex discrimination by the legal decisionmaker,[28] and therefore her Title VII claim related to her 2018 performance evaluation is analyzed under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). First, a plaintiff must establish a *prima facie* case of disparate treatment. To do so, a plaintiff must establish (1) membership in a protected class; (2) satisfactory job performance; (3) an adverse personnel action; and (4) that similarly situated employees outside the protected class received more favorable treatment. *See Gerner v. Cty. of Chesterfield*, 674 F.3d 264, 266 (4th Cir. 2012).

Here, plaintiff cannot establish a *prima facie* case of discrimination because she cannot identify anyone outside of her protected class who was treated more favorably than she was with respect to the 2018 performance evaluation. In this respect, Eric Mata was the rating official for plaintiff's 2018 performance evaluation. Every person that Mata rated during the 2018 performance evaluation process was female.[29] The only male employees in the Strategic Materials Contracting Directorate that received a 2018 performance evaluation higher than plaintiff were *rated by plaintiff.*[30] It is axiomatic that individuals with different supervisors are not similarly

---

[28] Direct evidence is "evidence of conduct or statements that both reflect directly on the alleged discriminatory attitude and that bear directly on the contested employment decision." *Johnson v. Mechs. & Farmers Bank*, 309 F. App'x. 675, 681 (4th Cir. 2009) (quoting *Taylor v. Va. Union Univ.*, 193 F.3d 219, 232 (4th Cir. 1999) (en banc)).

[29] *See* Declaration of Eric Mata, Dkt. 23-1, DEX 12, at ¶ 3.

[30] *See id.*

situated and that therefore a plaintiff cannot establish a *prima facie* case of discrimination through comparison to those individuals.[31] Accordingly, because plaintiff has failed to identify any similarly situated male employee that received a higher 2018 performance evaluation, she has failed to establish a *prima facie* case of sex-based discrimination stemming from her 2018 performance evaluation. Thus, defendant is entitled to summary judgment on plaintiff's sex-based discrimination claim related to her 2018 performance evaluation.

## VI.

Defendant has also moved for summary judgment on plaintiff's retaliation-based discrimination claim stemming from plaintiff's 2018 performance evaluation on the grounds that plaintiff cannot establish a *prima facie* case of retaliation and that defendant has legitimate, non-discriminatory reasons for the performance evaluation. Here again, plaintiff does not contend that she has established a retaliation-based Title VII claim related to her 2018 performance evaluation. Because plaintiff has provided no evidence that defendant's legitimate, non-discriminatory reason for plaintiff's 2018 performance evaluation was pretextual, defendant is entitled to summary judgment on that claim.

Once again, the *McDonnell Douglas* framework applies, meaning (i) plaintiff must first establish a *prima facie* case of retaliation, (ii) then the burden shifts to defendant to articulate a legitimate, non-retaliatory reason for the adverse employment action giving rise to the claim, and (iii) then the burden shifts back to plaintiff to produce evidence sufficient to find that defendant's articulated reason is a mere pretext for illegal retaliation. *See Foster v. Univ. of Maryland-E. Shore*,

---

[31] *See, e.g., Hurst v. Dist. of Columbia*, 681 F. App'x 186, 193 (4th Cir. 2017) (affirming summary judgment against plaintiff where plaintiff failed to provide any evidence that the same decision-maker was involved in the employment decisions of the comparators) (citing *Stanback v. Best Diversified Prods., Inc.*, 180 F.3d 903, 910 (8th Cir. 1999) ("When different decision-makers are involved, two decisions are rarely similarly situated in all relevant respects.").

787 F.3d 243, 250 (4th Cir. 2015). To establish a *prima face* case of retaliation, a plaintiff must show that "(1) she engaged in a protected activity; (2) the employer acted adversely against her; and (3) there was a causal connection between the protected activity and the asserted adverse action." *Strothers v. City of Laurel, Md.*, 895 F.3d 317, 327 (4th Cir. 2018) (quoting *Ziskie v. Mineta*, 547 F.3d 220, 229 (4th Cir. 2008)).

Here, even assuming, *arguendo*, that plaintiff has made a *prima facie* showing of retaliation, defendant has provided a legitimate, non-discriminatory reason for plaintiff's 2018 performance evaluation, and plaintiff has provided no evidence that defendant's articulated reason is pretextual. In this respect, it is undisputed that defendant implemented a new performance appraisal system in 2018. Under the new performance appraisal system, supervisors had to rate each element of an employee's performance plan as 1 (Unacceptable), 3 (Fully Successful), or 5 (Outstanding). Eric Mata, plaintiff's first-line supervisor in 2018, regarded a "Fully Successful" rating as representative of effective and high-quality work and an "Outstanding" rating as representative of truly exceptional work and difficult to obtain. Plaintiff's evaluation demonstrates that she received an "Outstanding" score in certain areas and a "Fully Successful" rating in other areas, resulting in a summary rating of 3.8. Defendant has proffered that Mata performed an accurate evaluation of plaintiff's 2018 performance based on Mata's understanding of the new performance rating system implemented by DLA in 2018. Plaintiff has not identified any specific manner in which her 2018 performance evaluation is unrepresentative of her performance, and plaintiff has provided no evidence or argument to rebut defendant's legitimate, non-discriminatory reason for plaintiff's 2018 performance evaluation.[32] Accordingly, defendant is entitled to

---

[32] Here again, plaintiff does not contend that she has asserted a Title VII claim related to her 2018 performance evaluation. *See* Opposition to Defendant's Motion for Summary Judgement, Dkt. 26, at 1-2; *see also* notes 25 and 27, *supra*. In addition to the failure of this claim on the merits, plaintiff's failure to oppose defendant's summary

summary judgment on plaintiff's Title VII retaliation claim based on plaintiff's 2018 performance evaluation.

## VII.

Plaintiff has alleged that she was paid a lower wage than male employees doing substantially similar work in violation of the Equal Pay Act ("EPA"). Defendant seeks summary judgment on plaintiff's EPA claim on the ground that plaintiff has failed to establish that the DLA paid an appropriate comparator a higher wage than plaintiff was paid when she served as the Acting Director of Contracting. Because plaintiff has not carried her required burden to establish an appropriate comparator for her EPA claim, defendant is entitled to summary judgment on plaintiff's EPA claim.

The EPA prohibits sex-based discrimination by employers resulting in unequal pay for equal work. 29 U.S.C. § 206(d)(1); *Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974). To establish a *prima facie* case of discrimination under the EPA, a plaintiff must demonstrate (1) that the defendant-employer paid different wages to an employee of the opposite sex; (2) that the employees performed equal work on jobs requiring equal skill, effort, and responsibility; and (3) that such jobs are performed under similar working conditions. *See U.S. Equal Employment Opportunity Comm'n v. Maryland Ins. Admin.*, 879 F.3d 114, 120 (4th Cir. 2018) (citing *Corning Glass*, 417 U.S. at 195).

As the first step in an EPA claim, a plaintiff must identify a specific comparator of the opposite sex. *See Strag v. Bd. of Trustees*, 55 F.3d 943, 950 (4th Cir. 1995). In this respect, plaintiff asserts that Colonel Abner Devallon, who served in the Acting Director of Contracting position

---

judgment motion with respect to plaintiff's Title VII claim(s) related to her 2018 performance evaluation constitute abandonment of any such claim. *See Orbit Corp. v. Fedex Ground Package Sys., Inc.*, 2016 WL 6609184, at *15 (E.D. Va. Nov. 8, 2016) (collecting district court cases).

immediately prior to plaintiff, is plaintiff's appropriate male comparator for the purposes of her EPA claim. Defendant contends that Col. Devallon is an improper comparator because plaintiff and Col. Devallon were compensated by different employers for purposes of the EPA.[33] Specifically, defendant argues that plaintiff was compensated by DLA throughout her role as Acting Director of Contracting, whereas Col. Devallon was compensated by the U.S. Air Force throughout his role as Acting Director of Contracting.

Plaintiff has failed to establish that Col. Devallon is an appropriate comparator because the undisputed record establishes that the U.S. Air Force determined Col. Devallon's rate and method of pay and that the U.S. Air Force paid Col. Devallon during his tenure as Acting Director of Contracting for Strategic Materials. Specifically, a DLA Department of Human Resources employee has declared under penalty of perjury that:

> Federal employees may be detailed from one separately funded organization to another, such as the assignment of Col. Devallon to DLA Strategic Materials, as an active duty member of the Air Force. When active duty military members such as Col. Devallon come to DLA, they remain fully employed by the military, their compensation is determined by the military, and they do not become DLA employees.

Declaration of Rebecca Polansky, Dkt. 32-5, DEX 47, at ¶ 6. Thus, it is abundantly clear that plaintiff's employer, DLA, did not pay Col. Devallon a higher wage than plaintiff in the Acting

---

[33] Defendant also addresses two additional potential comparators: Sharon Blue and Charles Baker. Sharon Blue served as the Director of Contracting immediately prior to Col. Devallon serving in the Acting Director of Contracting role. Sharon Blue was compensated at the GS-15 level, higher than plaintiff's GS-14 level, but Blue is the same sex as plaintiff and therefore an inappropriate comparator for the purposes of the EPA. *See U.S. Equal Employment Opportunity Comm'n v. Maryland Ins. Admin.*, 879 F.3d 114, 120 (4th Cir. 2018) (stating that the first element of an EPA claim is that the defendant-employer paid different wages to *an employee of the opposite sex*). Charles Baker is the current Director of Contracting and was hired into that position immediately after plaintiff served as Acting Director of Contracting. Although Baker is a male comparator, Baker is compensated at the same GS-14 level as plaintiff, and thus plaintiff cannot establish an EPA claim using Baker as a male comparator because Baker has not been paid a higher wage than plaintiff for performing the same work. *See id.* (stating that the first element of an EPA claim is that the defendant-employer *paid different wages* to an employee of the opposite sex). Accordingly, the discussion *infra* focuses on Col. Devallon as plaintiff's comparator for the purposes of plaintiff's EPA claim.

Director of Contracting position. Accordingly, plaintiff has failed to establish a *prima facie* case under the EPA, and defendant is entitled to the entry of summary judgment on that claim.

Moreover, plaintiff has not submitted any admissible evidence that Col. Devallon was actually paid more than plaintiff in the Acting Director of Contracting position. Plaintiff merely cites to her complaint, which states that "the civilian equivalent of an Air Force Colonel is *roughly* a GS-15 under the federal government's General Schedule pay scale." Complaint, Dkt. 1, at ¶ 70 (emphasis added). But it is well-settled that plaintiff, as the non-movant here, cannot merely rely on allegations plead in the complaint to oppose defendant's motion for summary judgment. *See Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991) ("[T]he non-movant cannot merely rely on matters pleaded in the complaint, but must, by factual affidavit or the like, respond to the motion" for summary judgment.). Thus, plaintiff has failed to submit any admissible evidence that Col. Devallon was actually paid more than plaintiff in the Acting Director of Contracting role. Plaintiff has thus also failed to establish a *prima facie* case under the EPA in this respect, and defendant is entitled to the entry of summary judgment on plaintiff's EPA claim.

In sum, plaintiff has failed to establish a *prima facie* case of discrimination under the EPA. Accordingly, judgment must be entered in favor of defendant on plaintiff's EPA claim.

## VIII.

Plaintiff has alleged that she was subjected to a hostile work environment because of her sex and in retaliation for her prior protected activity. Defendant seeks summary judgment on this claim on the ground that the harassment alleged by plaintiff is neither severe nor pervasive enough to establish a hostile work environment claim. For the reasons set forth below, defendant's motion for summary judgment on plaintiff's hostile work environment claim must be denied.

For plaintiff's hostile work environment claim to survive summary judgment, plaintiff

must show that a reasonable jury could find that the alleged conduct by her co-workers: (1) was unwelcome; (2) was based on her protected class; (3) was sufficiently severe or pervasive to alter the conditions of her employment and to create an abusive work environment; and (4) was imputable to her employer. *See Pryor v. United Air Lines, Inc.*, 791 F.3d 488, 495–96 (4th Cir. 2015); *Baqir v. Principi*, 434 F.3d 733, 745 (4th Cir. 2006)). Stated differently, a hostile work environment claim is established upon proof that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citation omitted) (quotation marks omitted).

To begin with, it is necessary to identify the alleged conduct that plaintiff argues created a hostile work environment. In this respect, plaintiff has identified twenty separate instances in which plaintiff claims she was subjected to abusive conduct. *See* Plaintiff's Answer to Interrogatory No. 5, Dkt. 23-1, DEX 5, at 2-4. For the majority of this alleged conduct, either (i) plaintiff relies primarily on hearsay statements that cannot be credited at summary judgment, or (ii) the alleged conduct does not relate to plaintiff's sex or plaintiff's protected activity. *See Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996) (summary judgment record evidence cannot be based upon hearsay); *Hartsell v. Duplex Prod., Inc.*, 123 F.3d 766, 772 (4th Cir. 1997) (harassment must be based on plaintiff's protected class).

But plaintiff has presented evidence of alleged conduct that is clearly based on plaintiff's protected class as a woman. These alleged instances of harassment include:

- Plaintiff testified in her deposition that in January 2015, Chuck Harder, a co-worker, asked plaintiff in a staff meeting if plaintiff "was having surgery just to get bigger breasts because plaintiff did not really look sick." At the time, plaintiff had been diagnosed with breast cancer. Plaintiff reported this incident to her supervisor, but plaintiff believes that no action was taken. *See* Dep. of Jennifer Phillips, Dkt. 26-1, Ex. 1, at 131-32.

21

- Plaintiff testified in her deposition that in June 2015, she removed her jacket during a meeting with Gary Porter, Tom Rasmussen, and Ronnie Favors because the meeting room was warm. After removing her jacket, plaintiff claims that her three male co-workers stared at her breasts for the remainder of the meeting. Plaintiff testified that she tapped on the table and asked her male co-workers to look her in the eye, but they did not do so. Plaintiff reported this incident to her supervisor. Her supervisor followed up with plaintiff and told plaintiff that the shirt that plaintiff had been wearing underneath her jacket had been too transparent. *See* Dep. of Jennifer Phillips, Dkt. 26-1, Ex. 1, at 142-44.

- Plaintiff testified in her deposition that in August 2015, Chuck Harder blocked plaintiff's path in the hallway, told plaintiff that he liked the dress she was wearing because she "filled it out," and "rak[ed] her body with his eyes." Plaintiff reported this incident to her supervisor, but plaintiff believes that no action was taken. *See* Dep. of Jennifer Phillips, Dkt. 26-1, Ex. 1, at 160-64.

- Plaintiff testified in her deposition that from 2013 to 2016, several male co-workers would stare at her breasts while she was walking in the hallways at work. Plaintiff reported this incident to her supervisor, but plaintiff believes that no action was taken. *See* Dep. of Jennifer Phillips, Dkt. 26-1, Ex. 1, at 154-58.

- Plaintiff testified in her deposition that in 2017, Chuck Harder entered plaintiff's office while plaintiff's computer screen showed the DLA-wide LGBT screen-saver, and Harder asked plaintiff why she did not pose for the screen-saver since she was a "lezzie." Plaintiff reported this incident to her supervisor, but plaintiff believes that no action was taken. *See* Dep. of Jennifer Phillips, Dkt. 26-1, Ex. 1, at 160-64.

Defendant argues that these alleged incidents are not sufficiently severe or pervasive such that a reasonable jury could find that plaintiff was subjected to a hostile work environment. In this respect, defendant's argument fails. The point at which a work environment becomes hostile or abusive does not depend on any "mathematically precise test." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22 (1993). Instead, "the objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances.'" *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81, (1998) (quoting *Harris*, 510 U.S. at 23). These circumstances "may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance," but "no single factor is required."

*Harris*, 510 U.S. at 23.

Here, considering the evidence in the light most favorable to plaintiff as required at this stage, plaintiff's deposition testimony provides sufficient evidence from which a reasonable jury could find that plaintiff was subjected to severe and pervasive harassment based on her sex. Specifically, plaintiff has testified that her co-workers stared at her breasts frequently over a multi-year period, and plaintiff has testified about four specific, more severe incidents, in which she was allegedly harassed based on her status as a woman. Accordingly, defendant's motion for summary judgment must be denied with respect to plaintiff's hostile work environment claim.

## IX.

Plaintiff has alleged that she was not selected as the Director of Contracting in 2018 because of her gender, in violation of Title VII. Defendant seeks summary judgment on this claim on the ground that plaintiff was not selected for the Director of Contracting position for a legitimate, non-discriminatory reason that was not pretextual. Because plaintiff has failed to establish that defendant's legitimate, non-discriminatory reason for not selecting plaintiff as the Director of Contracting was a pretext for sex-based discrimination, defendant is entitled to summary judgment on this claim.

Plaintiff has not proffered direct evidence of sex discrimination and so must proceed under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Specifically, plaintiff must first "establish a *prima facie* [case of gender discrimination] by showing that (1) she is a member of a protected group, (2) she applied for the position in question, (3) she was qualified for that position, and (4) the defendant[] rejected her application under circumstances that give rise to an inference of unlawful discrimination." *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 268 (4th Cir. 2005). In the event plaintiff establishes a *prima*

23

*facie* case, defendant may rebut by articulating a legitimate, non-discriminatory justification for their decision. *Anderson*, 406 F.3d at 268. To overcome the legitimate, non-discriminatory justification, plaintiff must establish that the proffered justification is pretextual. *Id.*

Here, plaintiff satisfies her burden of establishing a *prima facie* case because (i) as a female, she is a member of a protected group; (ii) she applied for the Director of Contracting position; (iii) she was qualified for the Director of Contracting position; and (iv) defendant selected a man to fill the Director of Contracting position. Defendant does not dispute that plaintiff has established a *prima facie* case of sex discrimination, thereby shifting the burden to defendant to establish a legitimate, non-discriminatory reason for defendant's selection of Charles Baker for the Director of Contracting position.

Defendant has provided a legitimate, non-discriminatory justification for Baker's selection, namely that Baker had a higher average score than plaintiff from the four interview panelists and that Baker had a strong educational background and significant work experience. The Fourth Circuit has made clear that a candidate's qualifications and job performance "are widely recognized as valid, non-discriminatory bases for any adverse employment decision." *Evans v. Technologies Applications & Services Co.*, 80 F.3d 954, 960 (4th Cir. 1996). Moreover, the Fourth Circuit has held that a subjective assessment such as interview performance is a valid, non-discriminatory basis for an adverse employment decision. *See Hux v. City of Newport News*, 451 F.3d 311, 316–19 (affirming summary judgment for the employer after it chose not to select plaintiff in part based on her interview performance). Accordingly, defendant has provided a legitimate, non-discriminatory reason for its decision to hire Baker, and not plaintiff, for the Director of Contracting position.

This does not end the analysis, as plaintiff makes three arguments to support her contention

that defendant's proffered legitimate, non-discriminatory justification is a pretext for sex-based discrimination. Each of these arguments fails.

First, plaintiff argues that she had vastly superior qualifications for the Director of Contracting position as compared to Baker. Although it is well-settled that a Title VII plaintiff may establish pretext by showing that she is substantially more qualified than the employee that was selected for the position, it is equally well-established that showing one's qualifications are "similar or only slightly superior" is insufficient to establish pretext. *Moore v. Mukasey*, 305 F. App'x 111, 116 (4th Cir. 2008).[34]

In this respect, plaintiff has failed to demonstrate that her qualifications are substantially superior to Baker's qualifications. Plaintiff has 18 years of experience within Strategic Materials, whereas Baker had no experience within Strategic Materials prior to his selection as Director of Contracting. Plaintiff served as the Acting Director of Contracting for approximately one-year, and plaintiff has led the Contracting Directorate within Strategic Materials in awarding approximately $1,000,000 in sales and acquisition contracts. Baker, on the other hand, has a graduate-level education, has experience as a contracting professional, and previously served as the head of an organization in DLA where he managed multiple division heads within a contracting organization.

Importantly, plaintiff "cannot establish her own criteria for judging her qualifications for the promotion. She must compete for the promotion based on the qualifications established by her employer." *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 269 (4th Cir. 2005). Fourth Circuit "case law makes plain that [plaintiff's] self-assessment of [her] superior aptitude

---

[34] *See also Heiko v. Colombo Sav. Bank, F.S.B.*, 434 F.3d 249, 261 (4th Cir. 2006) ("When a plaintiff asserts job qualifications that are similar or only slightly superior to those of the person eventually selected, the promotion decision remains vested in the sound business judgment of the employer.").

for the position fails to rebut the Government's legitimate explanation." *Moore*, 305 F. App'x at 116. Plaintiff's argument plainly relies on her self-assessment of her superior experience within Strategic Materials as the basis for her superior qualifications, and this argument plainly fails.

Indeed, the Fourth Circuit has recognized that a plaintiff's superiority to the selectee in one relevant area does not establish pretext when the decision was also based on other factors. *Harris v. Mayor & City Council of Baltimore*, 429 F. App'x. 195, 204 (4th Cir. 2011). Here, defendant did not base its decision as to which candidate was most qualified solely based on work experience within Strategic Materials, but also considered the candidates' interview responses, educational experience, and relevant work experience outside of Strategic Materials. As the Fourth Circuit has made clear, "[it] is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff." *DeJarnette v. Corning Inc.*, 133 F.3d 293, 299 (4th Cir. 1998) (internal quotations omitted). Accordingly, plaintiff has failed to demonstrate that her qualifications are substantially superior to Baker's qualifications.

Second, plaintiff argues that defendant violated its selection policies in selecting Baker as the Director of Contracting, which demonstrates pretext. But even if plaintiff's claim that defendant failed to follow hiring policies were true, it would not constitute evidence of pretext here because the failures would affect all candidates equally. *See Russell v. Harlow*, 771 F. App'x 206, 208 (4th Cir. 2019) (holding that there must be some evidence that an employer's failure to follow its own internal procedures "directly and uniquely disadvantaged a minority employee") (quoting *Johnson v. Weld Cty.*, 594 F.3d 1202, 1213 (10th Cir. 2010)).[35]

---

[35] Of course, an employer's *selective* failure to follow policy may evince pretext. *See Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 299 (4th Cir. 2010) ("a trier of fact could reasonably find that [the employer's] selective application and ever-changing rationales for [the test used to disqualify plaintiff] were designed to conceal an intent to reserve the...positions for male drivers only"). But plaintiff makes no allegation that the defendant's alleged failure to follow policy was selective. Rather, the defects plaintiff alleges affected each applicant to the Director of Contracting role, including the male candidate that was ultimately selected.

Plaintiff argues that the selection process for the Director of Contracting position (i) was impermissibly based on "formal scoring,"[36] (ii) failed to adhere to the requirement that "experience, training education, and awards" be considered during the process,[37] and (iii) involved the impermissible re-posting of the job vacancy when a sufficient number of qualified candidates has already responded to the initial job posting.[38] With respect to formal scoring, all candidates were subject to numerical scores from each member of the interview panel, and every candidate was asked the exact same interview questions.[39] Thus, plaintiff was not directly or uniquely disadvantaged by the decision to use numerical scoring for the interview process.

Seeking to avoid this conclusion, plaintiff argues that the two interview panelists who rated plaintiff with the lowest scores were aware of her prior protected EEO activity. Plaintiff further argues that these two interview panelists' knowledge of her prior EEO activity provides an inference that the low interview scores were retaliatory. But even if true, plaintiff's argument would constitute evidence that defendant's non-selection was retaliatory, not that defendant's decision was because of sex-based discrimination.[40] Accordingly, plaintiff's argument that defendant's use of formal scoring violated defendant's selection policies provides no support for the conclusion that defendant's legitimate, non-discriminatory reason for hiring Bakers is a pretext

---

[36] DLA Instruction 1404.01, Enclosure 3 Section 8(c) states that "[h]iring managers may not use any form of written test or formal scoring in the selection decision process." *See* DLA Instruction 1404.01, Dkt. 26-1, Ex. 9, at 11.

[37] DLA Instruction 1404.01, Enclosure 3 Section 9 states that "[h]iring managers will consider experience, training, education, and awards and information provided during the interview when making selections." *See* DLA Instruction 1404.01, Dkt. 26-1, Ex. 9, at 11.

[38] DLA Instruction 1404.01, Enclosure 3 Section 7(a) states that "[w]hen a referral list contains at least three best qualified promotion candidates, the hiring manager may not refuse the list based solely on an inadequate number of candidates." *See* DLA Instruction 1404.01, Dkt. 26-1, Ex. 9, at 11.

[39] *See* Dep. of Eric Mata, Dkt. 32-1, DEX 43, at 67.

[40] Plaintiff's Title VII retaliation claim based on her non-selection for the Director of Contracting position is addressed in Part X, *infra*.

for sex-based discrimination.

Plaintiff's next claimed violation of defendant's selection policies—namely that defendant did not consider experience, training, education, and awards in the selection process—is clearly belied by the record. Eric Mata, the selecting official, reviewed the candidates' resumes, which included the candidates' experience, training, education, and awards, in determining who would be interviewed for the Director of Contracting position.[41] Moreover, Mata provided each member of the interview panel with the candidates' resumes prior to the interviews.[42] And the interview questions covered topics including the candidates' management experience, management skills, and experience with public speaking.[43] Thus, it is abundantly clear that Mata actually considered the candidates' experience, training, education, and awards in the Director of Contracting selection process.

With respect to plaintiff's final alleged violation of defendant's selection policies—namely that the re-posting of the Director of Contracting job vacancy after a sufficient number of qualified candidates had already responded to the initial job posting—it is unmistakably clear that the second posting of the job vacancy did not impact plaintiff at all. All three candidates who were interviewed for the Director of Contracting position applied to both the first and second posting of the job vacancy, and all three candidates were included in the certification list for both the first and second posting of the job vacancy. Accordingly, posting the Director of Contracting job vacancy a second time had no impact on plaintiff's non-selection for the Director of Contracting position and cannot establish that defendant's legitimate, non-discriminatory reason for selecting Baker was a pretext

---

[41] *See* Dep. of Eric Mata, Dkt. 23-1, DEX 6, at 40.

[42] *See* Dep. of Eric Mata, Dkt. 32-1, DEX 43, at 67.

[43] *See* Eric Mata's Interview Notes, Dkt. 32-2, DEX 44.

for sex-based discrimination.

Plaintiff's third line of argument with respect to establishing pretext is that defendant's Certificate of Eligibles demonstrates that Baker was pre-selected for the Director of Contracting position before any of the candidates were interviewed. This argument is also belied by the record. Plaintiff asserts that the date that the Certificate of Eligibles issued was June 15, 2018,[44] that Baker is identified as "selected" on the Certificate of Eligibles, and that no candidates were interviewed until June 29, 2018. Plaintiff therefore concludes, incorrectly, that Baker was selected for the Director of Contracting position prior to the interviews taking place. In response, defendant has submitted a sworn declaration from an employee in the Strategic Materials Human Resources Department, which states that (i) the June 15, 2018 "Issued Date" on the Certificate of Eligibles is the date that Human Resources put a list of qualified candidates together to send to the selection committee; and (ii) when the selecting official selects a candidate for the job, the selecting official updates the certificate to identify the selectee but that does not change the issue date of the certificate in the database.[45] Accordingly, it is clear that the Certificate of Eligibles in this case does not support plaintiff's argument that defendant's reliance on the interview scores to select Baker was actually pretext for sex-based discrimination.

In sum, plaintiff has failed to establish that defendant's legitimate, non-discriminatory justification for Baker's selection as Director of Contracting is pretext for sex-based discrimination. Accordingly, plaintiff's Title VII sex-based discrimination claim fails as a matter of law, and summary judgment must be granted in favor of defendant with respect to that claim.

---

[44] *See* Certificate of Eligibles, Dkt. 23-1, DEX 7.

[45] *Id.* at ¶ 2-4.

**X.**

Finally, plaintiff has alleged that she was not selected as the Director of Contracting in 2018 in retaliation for her prior protected activity, in violation of Title VII. Defendant seeks summary judgment on plaintiff's retaliation-based discrimination claim on the ground that plaintiff was not selected for the Director of Contracting position for a legitimate, non-discriminatory reason that was not pretextual. For the reasons set forth below, defendant's motion for summary judgment on this claim must be denied.

**A.**

With respect to this claim, it is first necessary to address plaintiff's motion for leave to supplement the summary judgment record, which plaintiff filed five days after oral argument was held on defendant's motion to dismiss and defendant's motion for summary judgment. Defendant opposes plaintiff's motion for leave to supplement. For the reasons that follow, plaintiff's motion for leave to supplement is granted.

Plaintiff's motion seeks leave to supplement the summary judgment record with a sworn declaration from plaintiff dated December 18, 2018. In this affidavit, plaintiff avers that "Ronnie Favors told [her that she] would not be selected for the Director position if [she] did not accept the mediation settlement" that was discussed with respect to her January 2018 EEO complaint. *See* Declaration of Jennifer Phillips, Dkt. 34-1, at 23. Plaintiff's opposition brief to defendant's motion for summary judgment includes this same allegation, but plaintiff's opposition brief only cites to the complaint to support that allegation. *See* Opposition Brief, Dkt. 26, at 21. As noted, a party cannot rely on allegations made in a complaint at summary judgment, but instead must provide admissible record evidence to oppose a motion for summary judgment. *See Cambridge Capital Grp. v. Pill*, 20 F. App'x 121, 124–25 (4th Cir. 2001) ("Allegations contained in a complaint are

not evidence, and cannot defeat a motion for summary judgment."). Accordingly, plaintiff has filed its motion for leave to supplement in order to provide admissible evidence of Favors' alleged statements to plaintiff regarding the EEO mediation settlement.

In this respect, Rule 56(e), Fed. R. Civ. P., provides that:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
> (1) give an opportunity to properly support or address the fact;
> (2) consider the fact undisputed for purposes of the motion;
> (3) grant summary judgment if the motion and supporting materials — including the facts considered undisputed — show that the movant is entitled to it; or
> (4) issue any other appropriate order.

Rule 56(e), Fed. R. Civ. P. Whether to afford a party an opportunity to support or address a fact properly after the party has failed to do so lies within a district court's discretion. *See Martin v. Int'l Longshoremen's Ass'n, Local 1248*, No. 2:17CV175, 2017 WL 5146018, at *7 (E.D. Va. Aug. 16, 2017) (citing *Monsanto Co. v. ARE-108 Alexander Rd., LLC*, 632 Fed. Appx. 733, 736-37 (4th Cir. 2015)).

Here, defendant argues that plaintiff's motion to supplement should be denied because plaintiff has provided no explanation or excuse for the failure to include this allegedly relevant evidence in the summary judgment record prior to defendant's reply brief. Plaintiff, through counsel, merely states that the failure to cite to admissible evidence was "inadvertent." *See* Motion for Leave to Supplement, Dkt. 34. Plaintiff's counsel's failure to cite to admissible evidence is a serious and significant error. But it would be inappropriate in this instance to penalize plaintiff for the significant error made by her counsel.

Importantly, defendant is not prejudiced by granting plaintiff's motion for leave to supplement because plaintiff included an allegation of this same fact in her opposition brief, albeit without a citation to record evidence. Moreover, defendant specifically responded to plaintiff's

assertion of this fact in defendant's reply brief. In this respect, defendant provided a declaration from Ronnie Favors that specifically states that he "never told [plaintiff] that she would not be selected for the Director of Contracting position if she did not accept the mediated settlement." Declaration of Ronnie Favors, Dkt. 32-7, DEX 49, at ¶ 7. Accordingly, defendant has already submitted admissible evidence that directly contradicts the evidence with which plaintiff seeks to supplement the record. In this limited circumstance, it is appropriate to grant plaintiff's motion for leave to supplement the summary judgment record, and therefore plaintiff's motion is granted.

**B.**

Now it is appropriate to turn to the merits of defendant's motion for summary judgment on plaintiff's retaliation-based discrimination claim stemming from plaintiff's non-selection for the Director of Contracting position. Because there is a genuine dispute of material fact as to whether Ronnie Favors told plaintiff that she would not be selected for the Director of Contracting position if she did not accept an EEO mediation settlement, defendant's motion must be denied with respect to this claim.

A plaintiff may prove a Title VII retaliation-based violation through direct and indirect evidence of retaliatory animus, or through burden-shifting framework of *McDonnell Douglas. Foster v. Univ. of Maryland-E. Shore*, 787 F.3d 243, 249 (4th Cir. 2015). Direct evidence "must demonstrate that an adverse employment action was actually due to [a protected activity] as opposed to some other lawful reason." *Sharif v. United Airlines, Inc.*, 841 F.3d 199, 205 (4th Cir. 2016) (citation omitted).

Here, plaintiff offers direct and indirect evidence of retaliation such that a genuine dispute of material fact exists as to whether her non-selection for the Director of Contracting position was due to retaliatory animus. Specifically, plaintiff avers through a sworn declaration from December

2018 that Ronnie Favors allegedly told plaintiff that she would not be selected for the Director of Contracting position if she did not accept the EEO mediation settlement that was offered to her in February 2018. *See* Declaration of Jennifer Phillips, Dkt. 34-1, at 23. It is undisputed that plaintiff was subsequently not selected as the Director of Contracting in July 2018. Although Eric Mata, not Ronnie Favors, was the selecting official for the Director of Contracting position, plaintiff has submitted Favors's sworn statement from January 2019, in which Favors states that he has "final approval on all [Strategic Materials] personnel" decisions, including the Director of Contracting selection. *See* Declaration of Ronnie Favors, Dkt. 26-1, Ex. 12, at 11. Thus, plaintiff has submitted some direct and indirect evidence that plaintiff's non-selection for the Director of Contracting position was because of retaliatory animus.

In response, defendant has submitted evidence that directly contradicts plaintiff's evidence on this issue. Specifically, defendant has submitted a sworn declaration from Ronnie Favors dated January 16, 2020, in which Favors avers (i) that he never told plaintiff that she would not be selected for the Director of Contracting position if she did not accept the mediated settlement and (ii) that Favors never told Mata, either directly or indirectly, not to select plaintiff for the Director of Contracting Position. *See* Declaration of Ronnie Favors, Dkt. 32-7, DEX 49, at ¶¶ 7, 10. The sworn statements of plaintiff and Favors create a triable issue of fact as to whether plaintiff's non-selection for the Director of Contracting position was because of retaliatory animus. Accordingly, defendant's motion for summary judgment on plaintiff's retaliation-based discrimination claim stemming from plaintiff's non-selection for the Director of Contracting position must be denied.

*            *            *

For the reasons set forth above, defendant's motion to dismiss is granted in part and denied in part, defendant's motion for summary judgment is granted in part and denied in part, and plaintiff's motion for leave to supplement is granted. Specifically,

- Plaintiff's Title VII claims related (i) to her non-selection for the Deputy Administration position in 2016 and (ii) to her 2019 performance evaluation are dismissed without prejudice for failure to exhaust her administrative remedies.

- Plaintiff's Title VII claims related (i) to plaintiff's compensation as Acting Director of Contracting and (ii) to the absence of an SF-50 to document plaintiff's position as Acting Director of Contracting are dismissed without prejudice for failure to exhaust her administrative remedies in a timely manner.

- Defendant's motion for summary judgment is granted with respect to (i) plaintiff's sex-based discrimination claim related to her 2018 performance evaluation; (ii) plaintiff's retaliation-based discrimination claim related to her 2018 performance evaluation; (iii) plaintiff's EPA claim; and (iv) plaintiff's sex-based discrimination claim related to her non-selection as the Director of Contracting in 2018.

- Defendant's motion for summary judgment is denied with respect to (i) plaintiff's hostile work environment claim; and (ii) plaintiff's retaliation-based discrimination claim related to her non-selection as the Director of Contracting in 2018.

An appropriate order will issue separately.

The Clerk is directed to provide a copy of this Opinion to all counsel of record.

Alexandria, Virginia
June 30, 2020

T. S. Ellis, III
United States District Judge